1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ANDRES FELIPE ARRECHEA MAZORRA,** | Case No. 25-cv-10492 |
| Petitioner, | |
| **vs.** | **ORDER GRANTING TEMPORARY RESTRAINING ORDER** |
| **SERGIO ALBARRAN, ET AL.,** | |
| Respondents. | |

Before the Court is Petitioner's *Ex Parte* Motion for Temporary Restraining Order.  TRO Mot., ECF No. 2.  On December 6, 2025, Petitioner filed a Petition for Writ of Habeas Corpus, and an *Ex Parte* Motion for Temporary Restraining Order, against Respondents Field Office Director of the San Francisco Immigration and Customs Enforcement Office Sergio Albarran, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pamela Bondi.  ECF Nos. 1, 2.  Petitioner asks this Court to (1) order his immediate release from Respondents' custody pending these proceedings, and (2) enjoin Respondents from transferring him out of this District or deporting him during the pendency of the underlying proceedings.  *See* Notice of Mot., ECF No. 2.  For the foregoing reasons, the TRO is **GRANTED** as modified below.

## I.    Background

According to the record before the Court, Petitioner is an asylum seeker who fled to the United States from Colombia in 2024.  Pet. for Writ of Habeas Corpus, ECF No. 1 ¶¶ 1, 3.  "In 2024, when Respondents chose to release Petitioner on parole at the border, that decision represented their finding that he was neither dangerous nor a flight risk."  Mot. at 10.  "Since being released, Petitioner has consistently reported to all required ICE and ISAP check-ins. He has also reported monthly via the ISAP application on his phone. After his first appointment with ICE,

his ankle monitor was removed. He continued to follow ICE guidelines." Pet. ¶ 5. Petitioner "has no criminal history." *Id*. ¶ 1.

On December 3, 2025, Petitioner attended an ICE check-in at 630 Sansome Street in San Francisco. Pet. ¶ 6. He "showed up at the ICE check-in, already feeling unwell. He was not able to bring his insulin to the check-in, nor did he have any food. He had only a small amount of his HIV medication." *Id*. ¶ 11. At the check-in, petitioner was informed that he was being detained. *Id*. ¶ 6. "Soon after being detained at 630 Sansome Street in San Francisco, Petitioner began feeling nausea, headaches, and difficulty breathing. He was transported to Highland Hospital in Oakland, California, where doctors are treating his severe complications from diabetes and ordering additional tests." *Id*. ¶ 12. Petitioner is currently being detained at Highland Hospital in Oakland. *Id*. ¶ 2.

Late in the evening of December 6, 2025, this Petition was filed. The same day, Petitioner's counsel provided notice of the Petition and a forthcoming motion for a TRO, along with a copy of the Petition, to Respondents' counsel. Decl. of Jonathan Abel, ECF No. 2-2 ¶ 12. Later that day, counsel filed the motion for the TRO and sent a copy to Respondents' counsel. *Id*. ¶ 12. In the motion, Petitioner contends that his arrest and detention violate the Due Process Clause of the Fifth Amendment, both substantively (because Respondents allegedly have no valid interest in detaining him) and procedurally (because he was not provided with a pre-detention bond hearing).

## II.    Legal Standard

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if

1    the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are

2    satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal

3    quotation marks and citations omitted).  "[W]hen the Government is the opposing party," the final

4    two factors "merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

5        An injunction is a matter of equitable discretion and is "an extraordinary remedy that may

6    only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555

7    U.S. at 22.  A "TRO 'should be restricted to . . . preserving the status quo and preventing

8    irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no

9    longer.'"  *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting

10   *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S.

11   423, 439 (1974)).

## III.    Discussion

13       Petitioner has demonstrated a likelihood of success on the merits of his claim that his

14   ongoing detention violates his procedural due process rights under the Fifth Amendment.

15   Petitioner has a substantial interest in remaining out of custody, and the Due Process Clause

16   entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention.

17   *Pinchi v. Noem*, --- F. Supp. 3d ----, No. 25-cv-05632-PCP, 2025 WL 2084921, at *2-6 (N.D. Cal.

18   July 24, 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319

19   (1976) to similar circumstances); *see also Pablo Sequen v. Kaiser*, --- F. Supp. 3d ----, No. 25-cv-

20   06487-PCP, 2025 WL 2203419, at *2 (N.D. Cal. Aug. 1, 2025) (collecting cases).

21       Petitioner has also demonstrated a likelihood of irreparable injury in the absence of

22   temporary relief.  The likely unconstitutional deprivation of liberty that Petitioner faces is an

23   immediate and irreparable harm.  "It is well established that the deprivation of constitutional rights

24   'unquestionably constitutes irreparable injury.'"  *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th

25   Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier

26   v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005).  "[I]t follows inexorably from [the]

27   conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that he has

28   "also carried his burden as to irreparable harm."  *Hernandez*, 872 F.3d at 995.

United States District Court
Northern District of California

1    The final two *Winter* factors, the balance of the equities and public interest, also weigh

2  heavily in favor of granting temporary relief.  "[T]he public has a strong interest in upholding

3  procedural protections against unlawful detention, and the Ninth Circuit has recognized that the

4  costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-

5  01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695

6  F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's

7  constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir.

8  2005) ("Generally, public interest concerns are implicated when a constitutional right has been

9  violated, because all citizens have a stake in upholding the Constitution.").  As other courts in this

10  district and others have concluded under similar circumstances, "the potential harm to [Petitioner]

11  is significant, while the potential harm to the government is minimal." *Pablo Sequen*, 2025 WL

12  2203419, at *3.  At most, the government faces a short delay in detaining Petitioner if it ultimately

13  demonstrates, by clear and convincing evidence, that his detention is necessary to prevent danger

14  to the community or flight.  *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-

15  05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).  The government is not "harmed in

16  any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S.

17  Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Faced with "a conflict between

18  [administrative] concerns and preventable human suffering, [the Court has] little difficulty

19  concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872

20  F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

21    A TRO immediately releasing Petitioner is appropriate to return him to the status quo.  *E.

22  Bay Sanctuary Covenant*, 932 F.3d at 779.  The status quo refers to "the last uncontested status

23  which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D.

24  Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)).

25  That is the moment prior to Petitioner's likely illegal detention.  *See Kuzmenko v. Phillips*, No. 25-

26  cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining

27  order requiring immediate release of the petitioner back to home confinement from custody, as a

28  restoration of the status quo).

United States District Court
Northern District of California

1    Because Petitioner satisfies all requirements for temporary injunctive relief and such relief

2    is necessary to restore the status quo, the TRO Motion is granted as detailed below.  This Order

3    accords with many other recent grants of temporary relief in similar circumstances.  *See, e.g.*, *Alva*

4    *v. Kaiser*, No. 25-cv-06676, 2025 WL 2294917, at *3 (N.D. Cal. Aug. 7, 2025) (granting

5    temporary restraining order); *Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *4 (N.D.

6    Cal. July 4, 2025) (granting temporary restraining order requiring release of asylum seeker and a

7    pre-detention bond hearing before re-arrest); *Singh*, 2025 WL 1918679, at *10 (granting

8    preliminary injunction); *Doe v. Becerra*, No. 25-cv-647-DJC-DMC, 2025 WL 691664, at *8 (E.D.

9    Cal. Mar. 3, 2025) (granting temporary restraining order); *see also Diaz*, 2025 WL 1676854

10   (granting temporary restraining order requiring pre-detention hearing before re-detention of

11   noncitizen out of custody five years); *Garcia v. Bondi*, No. 25-cv-5070, 2025 WL 1676855, at *3

12   (N.D. Cal. June 14, 2025) (granting temporary restraining order requiring pre-detention hearing

13   before re-detention of noncitizen out of custody six years ); *Enamorado v. Kaiser*, No. 25-cv-

14   4072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025).

15   Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of

16   bond.  "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their]

17   conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  Therefore, no security is

18   needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . .

19   hav[ing] been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).

20   **IV.    Order**

21   For the foregoing reasons, it is hereby **ORDERED** that Petitioner's Motion for Temporary

22   Restraining Order is **GRANTED** to preserve the status quo pending further briefing and a hearing

23   on this matter.  Respondents are **ORDERED** to immediately release Petitioner from Respondents'

24   custody pending full briefing and hearing on the underlying petition and/or a preliminary

25   injunction regarding re-detention.[1]  Respondents shall file a status report **by 10:00 a.m. on**

26

27   ───────────────────────
     [1] Petitioner also asks the Court to order that he remain within the Northern District of
     California in order to preserve this Court's jurisdiction, but it is well-established that "when the

28   Government moves a habeas petitioner after she properly files a petition naming her immediate
     custodian, the District Court retains jurisdiction and may direct the writ to any respondent within

1  **Tuesday, December 9, 2025** confirming release and shall not re-detain pending resolution of the

2  forthcoming hearing.

3      Respondents are **ORDERED TO SHOW CAUSE** why the petition should not be granted

4  and/or a preliminary injunction should not issue regarding re-detention.  Respondents shall file a

5  response to Petitioner's motion by no later than **12:00 noon on December 12, 2025**.  Any reply

6  shall be filed by close of business on **December 17, 2025**.  A hearing shall be heard at 10:00 a.m.

7  by Zoom on **December 22, 2025.  This order shall remain in effect until that time.**  Parties are

8  advised that the assigned judge may change the briefing schedule and the hearing date.

9      **IT IS SO ORDERED.**

10  Dated: December 7, 2025

        _____
11      YVONNE GONZALEZ ROGERS
        UNITED STATES DISTRICT COURT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____
    its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*,
28  542 U.S. 426, 441 (2004).