1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    A.F.A.M.,                                    Case No. 25-cv-10492-AMO

8                  Petitioner,

9         v.                                      **ORDER GRANTING MOTION FOR
                                                  PRELIMINARY INJUNCTION**
10   SERGIO ALBARRAN, et al.,

11                 Respondents.

12

13        Petitioner A.F.A.M. is an asylum seeker who was detained at an Immigration and Customs

14   Enforcement ("ICE") check-in on December 3, 2025.  Dkt. No. 2-1 at 6.  A.F.A.M. filed a petition

15   for writ of habeas corpus and a motion for a temporary restraining order ("TRO") seeking release

16   from detention.  *See* Dkt. Nos. 1, 2.  On December 7, 2025, the Court issued a TRO requiring

17   Respondents Sergio Albarran, Todd M. Lyons, Kristi Noem, and Pamela Bondi ("Respondents")

18   to release A.F.A.M. and enjoining them from re-detaining him pending full briefing and a hearing

19   on the underlying habeas petition and/or a preliminary injunction.  Dkt. No. 4 at 5-6.  The Court

20   also ordered Respondents to show cause why a preliminary injunction should not issue.  *Id.*  On

21   December 12, 2025, Respondents filed their response, Dkt. No. 12, and A.F.A.M.'s reply followed

22   on December 17, 2025, Dkt. No. 15.  Having carefully considered the parties' papers and the

23   arguments made therein and at the hearing, as well as the relevant legal authority, the Court

24   **GRANTS** A.F.A.M.'s motion for a preliminary injunction for the following reasons.

25        **I.    BACKGROUND**

26        A.F.A.M. is an asylum seeker from Colombia.  Petition for Writ of Habeas Corpus

27   ("Pet."), Dkt. No. 1 ¶¶ 1, 3.  He has no criminal record anywhere in the world.  Dkt. No. 2-1 at 6.

28   He entered the United States on July 20, 2024.  Deportation Officer Decl. ("DO Decl.") ¶ 4.  The

United States District Court
Northern District of California

1   same day, U.S. Customs and Border Protection ("CBP") detained him. *Id.* On July 21, 2024,

2   CBP put A.F.A.M. into expedited removal proceedings pursuant to 8 U.S.C. section 1225(b)(1).

3   *Id.* ¶ 5. A.F.A.M. subsequently expressed a fear of returning to Colombia and received a credible

4   fear interview with U.S. Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 6. On August 8,

5   2024, USCIS conducted a credible fear interview with A.F.A.M. and found that he did not

6   establish a credible fear of persecution or torture if he were to return to Colombia. *Id.* ¶ 7.

7   A.F.A.M. requested review of this decision and USCIS referred the decision to an Immigration

8   Judge for review. *Id.* On August 21, 2024, an Immigration Judge vacated USCIS's determination

9   and found that A.F.A.M. "established a significant possibility of eligibility" for asylum or

10  withholding of removal. Dkt. No. 14-2 at 10. On September 9, 2024, ICE released A.F.A.M. on

11  humanitarian parole pursuant to 8 U.S.C. section 1182(d)(5)(A). Dkt. No. 2-6 at 2.

12         As part of A.F.A.M.'s parole, he is required to attend ICE check-ins regularly. A.F.A.M.

13  has regularly appeared at check-ins, though Respondents contend he has missed two check-ins to

14  date. DO Decl. ¶ 10-11; Dkt. No. 2-1 at 6. A.F.A.M. disputes this. Dkt. No. 15 at 2. On

15  December 2, 2025, A.F.A.M. received a text message instructing him to report to an ICE check-in

16  the next day. Dkt. No. 2-1 at 6. On December 3, 2025, ICE detained A.F.A.M. at his check-in.

17  *Id.* A.F.A.M. lives with HIV and diabetes but was unable to bring insulin to his ICE check-in and

18  only brought a small amount of his HIV medication. Pet. ¶ 11. Soon after being detained,

19  A.F.A.M. began experiencing nausea, headaches, and difficulty breathing. *Id.* ¶ 12. He was

20  transported to a hospital, where doctors treated him for complications from diabetes. *Id.* ICE

21  continued to detain A.F.A.M. while he was hospitalized. *Id.* ¶ 2.

22         A.F.A.M. filed a habeas petition and moved for a TRO on December 6, 2025. Dkt. Nos. 1,

23  2. The same day, A.F.A.M. received a Notice to Appear at an immigration hearing to "show why

24  [he] should not be removed from the United States." Dkt. No. 2-6 at 3. The Court granted

25  A.F.A.M.'s TRO as modified on December 7, 2025. Dkt. No. 24. On December 8, 2025,

26  Petitioners filed a status report confirming that A.F.A.M. was released from ICE custody. Dkt.

27  No. 7.

28  / / /

United States District Court
Northern District of California

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    DISCUSSION

A.F.A.M. seeks a preliminary injunction to prevent Respondents from re-detaining him absent notice and a pre-deprivation hearing before a neutral decisionmaker, where "the government must prove by clear and convincing evidence that [A.F.A.M.] is a danger or flight risk." Pet. ¶¶ 18-20.

### A.  Legal Standard

To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief, (3) the balance of equities tips in the favor of the moving party, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where the government is a party, courts merge the analysis of the final two *Winter* factors, the balance of equities and the public interest. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Courts "explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (internal quotation marks and citation omitted). The *Winter* factors may be evaluated on a sliding scale, such that preliminary relief may be issued when the moving party demonstrates "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (citation omitted). To grant preliminary injunctive relief, a court must find that "a certain threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam).

### B.  Likelihood of Success on the Merits

A.F.AM. asserts that his re-detention violates his substantive and procedural rights to due process. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001) (citing *Campos-Sanchez v. I.N.S.*, 164 F.3d

United States District Court
Northern District of California

448, 450 (9th Cir. 1999), superseded by statute on other grounds as stated in *Arizmendi-Medina v. Garland*, 69 F.4th 1043, 1053 (9th Cir. 2023)).

Respondents contend that they can lawfully re-detain A.F.A.M. because he was put into expedited detention proceedings and is subject to mandatory detention under section 1225(b)(1)(B)(ii). Dkt. No. 14 at 5. The Court is not persuaded that section 1225(b)(1)(B)(ii) applies to A.F.A.M. Section 1225(b)(1)(B)(ii) requires a determination from an asylum officer "at the time of the [credible fear] interview" that the noncitizen has a credible fear. By its plain text, section 1225(b)(1)(B)(ii) does not apply to A.F.A.M., as an asylum officer never determined that A.F.A.M. had a credible fear.[1] Dkt. No. 15 at 9. To the contrary, the asylum officer determined A.F.A.M. did not have a credible fear. *Id.* Accordingly, the Court rejects Respondents' argument that A.F.A.M. is subject to mandatory detention pursuant to section 1225(b)(1)(B)(ii). *See Jimenez v. FCI Berlin*, No. 25-CV-326-LM-AJ, 2025 WL 2639390, at *6 (D.N.H. Sept. 8, 2025) (adopting the same interpretation of 1225(b)(1)(B)(ii)).

Respondents assert no other bases for re-detaining A.F.A.M., but assert that A.F.A.M. is not entitled to further process before re-detention because he was put into expedited removal proceedings. Respondents contend that A.F.A.M. has no liberty interest because "the statutory authority Petitioner is detained under does not afford him a right to immediate release or a bond hearing[.]" Dkt. No. 14 at 7. But section 1225(b)(1), the statute under which Respondents justified A.F.A.M.'s detention, expressly applies only to noncitizens "arriving in the United States" and noncitizens "who have not been admitted or paroled." On September 9, 2024, A.F.A.M. was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A). Dkt. No. 2-6 at 2. The Court agrees with other courts that have held section 1225(b)(1) "does not authorize designation for expedited removal of any noncitizen who has, at any point in time, been paroled into the United States." *Aviles-Mena v. Kaiser*, No. 25-CV-06783-RFL, 2025 WL 2578215, at *4

---

[1] At the hearing, Respondents asserted that this is a "literal" reading of the statute. The statute is unambiguous, and the Court is thus bound by its text. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'") (citations omitted).

1    (N.D. Cal. Sept. 5, 2025) (quoting *Coal. for Humane Immigrant Rts. v. Noem*, No. 25-CV-872,

2    2025 WL 2192986, at *21–27 (D.D.C. Aug. 1, 2025)).  Thus, the Court finds that A.F.A.M. no

3    longer qualifies for expedited removal because he was paroled into the United States.  Therefore,

4    A.F.A.M.'s due process rights are not limited by section 1225(b)(1).

5            Having concluded that A.F.A.M. is not subject to mandatory detention under

6    1225(b)(1)(B)(ii) nor expedited removal pursuant to 1225(b)(1), the Court next assesses whether

7    A.F.A.M.'s re-detention violates either his procedural or substantive due process rights.

### i.  Procedural Due Process

9            To determine what procedural process A.F.A.M. is owed, the Court considers well-trodden

10   factors set forth by the Supreme Court: (1) "the private interest that will be affected by the official

11   action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and

12   the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the

13   Government's interest, including the function involved and the fiscal and administrative burdens

14   that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424

15   U.S. 319, 335 (1976).  The Ninth Circuit has "assume[d] without deciding" that *Mathews* applies

16   in the immigration detention context.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-8 (9th

17   Cir. 2022) (applying *Mathews* and explaining "it remains a flexible test").  And many district

18   courts in this Circuit regularly apply *Mathews* in due process challenges to removal proceedings.

19   *See, e.g., Aviles-Mena v. Kaiser*, 2025 WL 2578215, at *4; *Pinchi v. Noem*, 792 F. Supp. 3d 1025,

20   1033 n.2 (N.D. Cal. 2025) (collecting cases).  The Court therefore joins the many district courts in

21   this Circuit that have applied *Mathews* in this context.  *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d

22   1316, 1321 n. 4 (W.D. Wash. 2025) (collecting cases).  The Court considers each factor in turn.

### 1.  Private Interest

24           A.F.AM. has a substantial interest in remaining out of custody.  A.F.A.M. lives with

25   serious medical conditions, including "uncontrolled diabetes and HIV."  Dkt. No. 2-1 at 15.  His

26   medical conditions "put him at extreme risk from detention", where he is unable to obtain his

27   regular medical care.  Dkt. No. 15 at 11.  In fact, due to his re-detention earlier this month,

28   A.F.A.M. was hospitalized for medical complications and he "fears further harm if detained away

United States District Court
Northern District of California

1    from his medical care." *Id.* If detained, A.F.A.M. would be unable to receive his regular medical

2    care, and unable to remain in his home, and continue building connections in his community. The

3    first *Matthews* factor therefore weighs in A.F.A.M.'s favor. *See Pinchi*, 792 F. Supp. 3d at 1033

4    (finding petitioner had a substantial interest "in remaining in her home, continuing her

5    employment, providing for her family, obtaining necessary medical care, maintaining her

6    relationships in the community, and continuing to attend her church."); *see also Castellon v.*

7    *Kaiser*, No. 1:25-CV-00968 JLT EPG, 2025 WL 2373425, at *9 (E.D. Cal. Aug. 14, 2025)

8    (finding petitioner "has a substantial private interest in being out of custody, which would allow

9    her to continue" obtaining necessary medical care).

### 2.   Risk of Erroneous Deprivation

11    Second, there is a risk Respondents will erroneously deprive A.F.A.M. of his liberty

12    interest if the government does not provide him with a pre-detention hearing. Where, as here, an

13    individual has not received a bond or redetermination hearing, "the risk of an erroneous

14    deprivation [of liberty] is high" because neither party has had an opportunity to present their case

15    before a neutral decisionmaker. *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679, at *7

16    (E.D. Cal. July 11, 2025). "Civil immigration detention is permissible only to prevent flight or

17    protect against danger to the community[.]" *Pinchi*, 792 F. Supp. 3d at 1035 (citing *Zadvydas v.*

18    *Davis*, 533 U.S. 678, 690-92 (2001)). Respondents do not argue that A.F.A.M. is a danger to the

19    community or a flight risk. Further, A.F.A.M. has no criminal history anywhere in the world and

20    was re-detained while attending an ICE check-in, suggesting that he is neither a danger to the

21    community nor a flight risk. Dkt. No. 15 at 1-2. For these reasons, there is a significant risk that

22    A.F.A.M.'s re-detention is not justified by any valid government interest. Providing A.F.A.M.

23    with a pre-detention hearing will help ensure any future detention is lawful. The second *Mathews*

24    factor therefore weighs in A.F.A.M.'s favor.

### 3.   Burden on Respondents Versus Petitioner's Interest

26    Finally, any countervailing government interest here is minimal. *See Ortega v. Bonnar*,

27    415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (finding the third factor favored petitioner, noting the

28    government "has the power to take steps toward" re-arresting petitioner, but "its interest in doing

United States District Court
Northern District of California

1    so without a hearing is low").  Respondents have identified no legitimate interest that would

2    support detaining A.F.A.M. without a pre-detention hearing.  Humanitarian parole is permitted

3    only for noncitizens who "present neither a security risk nor a risk of absconding."  8 C.F.R. §

4    212.5(b).  Therefore, in releasing A.F.A.M., "immigration officials necessarily determined that

5    Petitioner did not present a risk of flight or danger to the community."  *See J.E.H.G. v.*

6    *CHESNUT*, No. 1:25-CV-01673-JLT, 2025 WL 3523108, at *1 (E.D. Cal. Dec. 9, 2025).

7            Respondents argue that they re-detained A.F.A.M. due to his alleged failure to attend two

8    ICE check-ins.  Dkt. No. 14 at 3.  A.F.A.M. maintains that he attended all required ICE check-ins.

9    Dkt. No. 15 at 4-5.  But even if A.F.A.M. failed to attend two ICE check-ins, Respondents do not

10   argue this makes him a flight risk or danger to the community.  Courts have repeatedly rejected the

11   argument that ICE can re-detain a noncitizen for technical violations "without regard to whether

12   that technical violation means that one is a flight risk or danger."  *J.C.L.A. v. Wofford*, No. 1:25-

13   CV-01310-KES-EPG, 2025 WL 2959250, at *4 (E.D. Cal. Oct. 17, 2025); *Vilela v. Robbins*, No.

14   1:25-CV-01393-KES-HBK, 2025 WL 3101334, at *4 (E.D. Cal. Nov. 6, 2025) ("While

15   respondents assert that ICE arrested petitioner for those technical violations . . . they do not argue

16   that a missed check-in or failure to seek advance approval to move means that petitioner is a flight

17   risk or danger to the community."); *J.A.E.M. v. Wofford*, No. 1:25-CV-01380-KES-HBK, 2025

18   WL 3013377, at *4 (E.D. Cal. Oct. 27, 2025) ("Respondents do not argue that petitioner's two late

19   check-ins mean that he is a flight risk or danger to the community . . . [r]ather, respondents assert

20   that ICE arrested petitioner for those technical violations."); *E.A. T.-B.*, 795 F. Supp. 3d at 1322

21   ("Ultimately, even if Petitioner's arrest was not pretextual and was solely motivated by ICE's

22   realization of his ATD violations, it would not necessarily follow that Petitioner can be detained

23   for those violations without a hearing.").

24           In conclusion, the *Mathews* factors weigh in favor of A.F.A.M., and he has therefore

25   shown a likelihood of success on the merits of his claim that he is entitled to a hearing before a

26   neutral decisionmaker prior to any detention.

27                              **ii.  Substantive Due Process**

28           Even if A.F.A.M. did not show a likelihood of success on his procedural due process

1    claim, he has demonstrated a serious question going to the merits of his substantive due process

2    claim.[2]  Substantive due process requires that all forms of civil detention, including immigration

3    detention, bear a "reasonable relation" to a non-punitive purpose.  *See Jackson v. Indiana*, 406

4    U.S. 715, 738 (1972).  The Supreme Court has recognized only two permissible non-punitive

5    purposes for immigration detention: ensuring a noncitizen's appearance at immigration

6    proceedings and preventing danger to the community.  *Zadvydas v. Davis*, 533 U.S. at 690-92.

7    When immigration officials released A.F.A.M. on humanitarian parole, they determined that he

8    did not present a risk of flight or danger to the community.  *See* 8 C.F.R. § 212.5(b).

9    Respondents' contention that A.F.A.M.'s re-detention resulted from his failure to attend two ICE

10   check-ins – which A.F.A.M. disputes – does not show that he is a flight risk or danger to the

11   community.  *See Bernal v. Albarran*, No. 25-CV-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal.

12   Nov. 25, 2025) (finding that failure to complete self-report check-in did not "come close to

13   showing" that petitioner was a danger or flight risk).  A.F.A.M. has therefore demonstrated at least

14   a serious question as to whether his re-detention would violate his substantive due process rights

15   by failing to serve a non-punitive purpose.

### C.  Irreparable Harm

17          The Court next considers the second *Winter* factor and finds that A.F.AM. would likely

18   suffer immediate and irreparable harm absent injunctive relief.  Specifically, he would face "the

19   risk of immediate re-detention by ICE, likely in violation of [his] constitutional rights and with

20   potentially devastating consequences for . . . [his] health."  *Pinchi*, 792 F. Supp. 3d at 1036.  This

21   constitutes immediate and irreparable harm.  "[D]eprivation of constitutional rights

22   'unquestionably constitutes irreparable injury,' "  *Hernandez v. Sessions*, 872 F.3d 976, 995-995

23   (9th Cir. 2017) (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)), and "most courts

24   hold that no further showing of irreparable injury is necessary," *Warsoldier v. Woodford*, 418 F.3d

25   989, 1001-02 (9th Cir. 2005).

26

27   _____

28   [2] Because, as discussed *infra*, A.F.A.M. has established that the balance of hardships tips sharply
     in his favor, a preliminary injunction is warranted when he establishes a serious question as to the
     merits of his Due Process claims.  *See All. for the Wild Rockies*, 865 F.3d at 1131-1132.

United States District Court
Northern District of California

### D. Balance of Equities and Public Interest

Because the party opposing the motion is the government, the final two *Winter* factors

merge. *Nken*, 556 U.S. at 435. Here, these factors weigh heavily in favor of granting a

preliminary injunction. There is a strong public interest in "upholding procedural protections

against unlawful detention" as well as "in the efficient allocation of the government's fiscal

resources," *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug.

23, 2020) (citing *Hernandez*, 872 F.3d at 996 (internal quotations omitted)), so this factor supports

preliminary injunctive relief. And while the potential harm to A.F.A.M. is significant, the

"potential harm to the government is minimal." *Pinchi*, 792 F. Supp. 3d at 1038. At most,

Respondents' injury would be a short delay in detaining A.F.A.M. The balance of hardships

therefore tips sharply in favor of A.F.A.M. Accordingly, the final two *Winter* factors weigh in

favor of a preliminary injunction.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** A.F.A.M.'s motion for a preliminary

injunction. Respondents are **ENJOINED AND RESTRAINED** from re-detaining A.F.A.M.

without notice and a pre-deprivation hearing before an Immigration Judge to evaluate whether his

re-detention is warranted based on changed circumstances establishing A.F.A.M. is a flight risk or

a danger to the community. No security bond is required, as Respondents provide no evidence of

costs it will incur due to A.F.A.M.'s release. By January 5, 2026, the parties **SHALL FILE** a

joint statement with a proposed case management schedule.


**IT IS SO ORDERED.**

Dated: December 22, 2025


_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

9